UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

IMANI HURST,

    *Plaintiff*,

v.                                                              Case No. SA-20-CV-1366-JKP-ESC

EQUIFAX INFORMATION SERVICES,
LLC, EXPERIAN INFORMATION
SOLUTIONS, INC., TRANSUNION LLC,
and PROCOLLECT, Inc.,

    *Defendants*.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this case under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., against a furnisher of information (ProCollect, Inc. ("ProCollect")) and three credit reporting agencies ("CRA Defendants"). Before the Court is a *Joint Motion for Judgment on the Pleadings* (ECF No. 34) filed by the CRA Defendants. Pursuant to Fed. R. Civ. P. 12(c), they seek to dismiss all claims asserted against them. With the filing of Plaintiff's response (ECF No. 37) and the CRA Defendants' reply brief (ECF No. 39), the motion is ripe and ready for ruling. After considering the motion, other briefing, pleadings, and applicable law, the Court denies the motion for the reasons stated herein.

### I. BACKGROUND[1]

In November 2016, "Plaintiff entered a residential lease with landlord Prado SH, LP d/b/a Prado Student Living Apartments ('Landlord'), with the lease term set to start August 19, 2017, and conclude July 31, 2018." Compl. ¶ 21. A clause within the lease allowed "Armed Services member tenants and their family members and dependents to terminate the lease in the event they

---

[1] The background is taken from Plaintiff's allegations, which the Court views in a light most favorable to Plaintiff consistent with the standard for motions filed under Rule 12(c).

receive transfer orders after the date of the lease." *Id*. ¶ 22. When Plaintiff signed the lease, one of her parents "was an Armed Services member stationed at Fort Sam Houston." *Id*. ¶ 23.

In April 2017, Plaintiff's Armed Service parent received transfer orders to Washington. *Id*. ¶ 24. That same month, the Landlord "verbally terminated the lease" after being notified of the transfer order. *Id*. ¶ 25. Nevertheless, the Landlord retained ProCollect to collect an "alleged outstanding balance for the entirety of the terminated lease term," and the Landlord continues to "knowingly and erroneously represent[] that the lease was signed in September 2017, after the posting transfer orders were issued." *Id*. ¶¶ 26-27.

ProCollect furnished information to the credit reporting agencies, i.e., the CRA Defendants, who published it. *Id*. ¶ 28. According to Plaintiff, the information "is inaccurate since the lease was properly terminated with the Landlord and, hence, Plaintiff is not responsible for the lease balance." *Id*. Plaintiff has notified the CRA Defendants that she disputes the accuracy of the reported information. *Id*. ¶ 30. Despite her dispute, the CRA Defendants neither timely evaluated or considered "any of the information, claims, or evidence of the Plaintiff" nor timely made "an attempt to substantially reasonably verify that the derogatory information concerning the disputed account was inaccurate." *Id*. ¶ 35. And "ProCollect failed to continuously mark the account as disputed despite receiving notice of Plaintiff's dispute." *Id*. ¶ 34.

Plaintiff claims the CRA Defendants violated 15 U.S.C. § 1681i(a)(1)(A) "by failing to conduct a reasonable investigation and deleting the disputed trade line within 30 days of receiving [her] dispute letter." *Id*. ¶ 36. She claims that, as a result of this violation, she "has suffered a decreased credit score due to the inaccurate information on [her] credit file and a chilling effect on future applications for credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial." *Id*. ¶ 38.

Plaintiff also claims that the CRA Defendants willfully violated 15 U.S.C. § 1681e through failures "to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files that [they] maintained concerning the Plaintiff." *Id*. ¶¶ 41, 55, 69. She further claims that the CRA Defendants negligently violated § 1681i(a) by failing to (1) delete inaccurate information from her credit file "after receiving actual notice of such inaccuracies and conducting reinvestigation" and (2) "maintain reasonable procedures with which to verify the disputed information in [her] credit file." *Id*. ¶¶ 48, 62, 76. Additionally, she claims that they willfully, recklessly, and negligently failed to comply with the FCRA by (1) continuing to place inaccurate information into her credit report after she advised them "that the information was inaccurate" and (2) failing to

> (a) "follow reasonable procedures to assure the maximum possible accuracy of the information reported";
>
> (b) correct her "erroneous personal information" after her reasonable request;
>
> (c) "remove and/or correct the inaccuracy and derogatory credit information after [her] reasonable request";
>
> (d) "promptly and adequately investigate information" after receiving notice that it was inaccurate;
>
> (e) "note in the credit report that [she] disputed the accuracy of the information";
>
> (f) "promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised [the credit reporting agencies] to delete"; and
>
> (g) "take adequate steps to verify information [the credit reporting agencies] had reason to believe was inaccurate before including it in the credit report of the consumer."

*Id*. ¶¶ 42, 49, 56, 63, 70, 77. She seeks damages and attorney fees for these violations pursuant to 15 U.S.C. §§ 1681n and 1681o. *Id*. ¶¶ 44-45, 58-59, 65-66, 72-73, 79-80.

In May 2021, the CRA Defendants moved for judgment on the pleadings. After the motion became ripe for ruling, Plaintiff and ProCollect entered into a joint stipulation of dismissal as to

3

that defendant. *See* ECF No. 40. The Court now addresses the dispositive motion filed by the only defendants remaining in this action.

## II. MOTION FOR JUDGMENT ON THE PLEADINGS

The CRA Defendants move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). They seek dismissal of the claims against them on grounds that Plaintiff has failed to state a claim upon which relief can be granted. Mot. at 1. They contend that Plaintiff improperly brings this action as a collateral attack on a debt she owes to ProCollect who was collecting the debt for the Landlord. *See id*. They argue that because her complaint centers on contract law, she fails to allege a factual inaccuracy required to state a claim. *See id*. at 2.

Although the CRA Defendants do not characterize their contention as a defense, Plaintiff opposes the motion in part because "the Fifth Circuit has not adopted the 'legal dispute' defense as an affirmative defense under the FCRA, and this Court should reject the defense outright." *See* Resp. at 3. She also argues that (1) she does allege a factual inaccuracy in that she challenges that she owes the debt at all due to the Landlord terminating the lease and (2) even if her challenge to the debt owed is a legal dispute not cognizable under the FCRA, she has also alleged a failure to mark the account as disputed, which avoids the legal dispute issue raised by the CRA Defendants. *See id.* at 2-3.

Even though the CRA Defendants do not call their contention a defense, they also do not challenge that characterization. For ease of reference, the Court will refer to the contention as the "collateral-attack" doctrine. As will be seen later, whether it is a defense or not makes no difference under the facts of the instant motion.

### A. Legal Standard

The standard for a motion for judgment on the pleadings under Rule 12(c) is the same as for a motion filed under Fed. R. Civ. P. 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th

Cir. 2008). At its essence, this standard requires the complaint to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, viewing the pleading "in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Doe*, 528 F.3d at 418 (citation omitted). Furthermore, although a court addressing a motion under Rule 12(b)(6) or (c) generally "must limit itself to the contents of the pleadings, including attachments thereto," *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citation omitted),the court may consider such documents if attached to the motion when the pleading references documents that are central to a claim, *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

As required by Fed. R. Civ. P. 8(a)(2), every pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Such requirement provides opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Further, while asserted defenses may support dismissal under Rule 12(b)(6), they only do so when the operative 'pleading conclusively establishes the affirmative defense.'" *Morrison v. Marathon Petroleum Co., LP*, No. SA-20-CV-0480-JKP-RBF, 2021 WL 1739243, at *3 (W.D. Tex. May 3, 2021) (quoting *Reagan v. U.S. Bank, Nat. Ass'n*, No. CIV.A. H-13-00043, 2013 WL 510154, at *2 (S.D. Tex. Feb. 12, 2013)). That same standard applies to a defense raised through Rule 12(c).

**B. Preliminary Matters**

Both sides present the issues as simple with clear support on their side. But, although such simplicity and clarity may be apparent to an advocate for a desired position, it is neither simple nor clear to a court tasked to consider whether it should dismiss FCRA claims on the pleadings

when no binding precedent exists to compel a particular ruling. The parties obtain their clear vantage point by considering caselaw out of context and failing to recognize legal and factual nuances between their cited cases and the case now before the Court.

Further, while the Court might consider the underlying lease agreement and credit reports even on the instant motion, no party has provided such documents. Thus, the Court is left with a complaint that does not identify potentially pertinent provisions of the lease agreement other than to allege that it contains an "Armed Service" provision that permits termination of the lease if an Armed Service parent receives transfer orders after the date of the lease. In addition, the complaint is rather obtuse as to precisely what inaccurate information was contained within her credit reports. The alleged inaccurate information certainly relates to ProCollect's efforts to collect an alleged outstanding balance for the entirety of the terminated lease term. But because Plaintiff also alleges that the CRA Defendants failed to note in her credit reports that she disputed the entries related to ProCollect, the Court reasonably infers that she alleges such omissions as inaccurate information. Such inference is supported by the complaint and explicit assertions in her response to the motion.

Although the task before the Court at this early stage of litigation is hindered somewhat because it has had no opportunity to review what the credit reports actually contain, such hinderance does not preclude a ruling on the instant motion. The Court notes these preliminary matters in an effort to improve later filings in this case or others and to express its expectations for counsel and parties.

**C. Fair Credit Reporting Act**

The Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., "seeks to promote 'fair and accurate credit reporting' and to protect consumer privacy." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021) (quoting § 1681(a)). Given these "goals, the Act regulates the consumer reporting agencies that compile and disseminate personal information about consumers." *Id*. In doing

so, it "imposes a host of requirements concerning the creation and use of consumer reports." *Spokeo, Inc. v. Robins*, 578 U. S. 330, 335 (2016). This "comprehensive legislation" is "designed to regulate the consumer reporting industry." *Floyd v. Wells Fargo Home Mortgage Co.*, 848 F. Supp. 2d 635, 642 (E.D. La. 2012); *accord Ross v. FDIC*, 625 F.3d 808, 812 (4th Cir. 2010) ("The FCRA is a comprehensive statutory scheme designed to regulate the consumer reporting industry."); *FTC v. Manager, Retail Credit Co., Miami Beach Branch Off.*, 515 F.2d 988, 989 (D.C. Cir. 1975) ("The congressional prescription was a comprehensive series of restrictions on the disclosure and use of credit information assembled by consumer reporting agencies.").

The Act includes provisions that apply to credit reporting agencies as well as to furnishers of information to the agencies. *See Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002) (discussing various provisions). One court has aptly summarized the interrelationships:

> The FCRA imposes duties on consumer reporting agencies and furnishers in a manner consistent with their respective roles in the credit reporting market. Furnishers—such as banks, credit lenders, and collection agencies—provide consumer data to consumer reporting agencies. In turn, those agencies compile the furnished data into a comprehensible format, allowing others to evaluate the creditworthiness of a given consumer. Consumer reporting agencies and furnishers, though interrelated, serve discrete functions: furnishers report data to incentivize the repayment of debts, while consumer reporting agencies compile and report that data for a fee. What results is a credit reporting system, producing a vast flow and store of consumer information.

*Denan v. Trans Union LLC*, 959 F.3d 290, 294 (7th Cir. 2020) (footnote omitted). The relevant provisions differ depending upon the role of the entity sued.

The Act provides consumers a civil remedy for damages against "[a]ny person" who willfully or negligently fails "to comply with any requirement imposed under [§ 1681 et seq.]. *See* 15 U.S.C. §§ 1681n (willful noncompliance), 1681o (negligent noncompliance). Section 1681e governs compliance procedures applicable to every consumer reporting agency and § 1681i governs the procedure in cases of disputed accuracy.

7

"Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *Id*. § 1681e(b). And when a consumer disputes "the completeness or accuracy of any item of information contained" within the credit report and notifies the consumer reporting agency of such dispute, "the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file." *Id*. § 1681i(a)(1)(A). In addition:

> Whenever a statement of a dispute is filed, unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof.

*Id*. § 1681i(c).

Several elements comprise claims under both § 1681e(b) and § 1681i(a)(1)(A). *See Potter v. GreenSky, LLC*, No. 5:19-CV-00581-JKP, 2019 WL 5295494, at *2 (W.D. Tex. Oct. 18, 2019) (listing elements). For both claims, a plaintiff "must be able to show, at a minimum, that her consumer report contains inaccurate information; otherwise, she cannot establish that [the credit reporting agency] violated either section." *Saunders v. Equifax Info. Servs. LLC*, No. 16-CV-00525-LY, 2017 WL 3940942, at *4 (W.D. Tex. Aug. 3, 2017), *aff'd sub nom. Ostiguy v. Equifax Info. Servs., L.L.C.*, 738 F. App'x 281 (5th Cir. 2018). "A credit entry may be 'inaccurate' within the meaning of the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998).

Because inaccurate information is an essential element of both claims, the consumer bears the ultimate burden to show that a pertinent report is inaccurate. *Watkins v. Experian Info., Sols.,*

8

*Inc.*, No. 6:13-CV-00239-WSS-JCM, 2014 WL 12879669, at *5 (W.D. Tex. Sept. 8, 2014) (recommendation of Mag. J.) (citing *Washington v. CSC Credit Servs., Inc.*, 199 F.3d 263, 267 n.3 (5th Cir. 2000); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 n.9 (11th Cir. 1991) ("[T]he burden of proving that a particular report is inaccurate is part of the plaintiff's case and not an affirmative defense for a defendant credit reporting agency.") *adopted by* 2014 WL 12879668 (W.D. Tex. Oct. 3, 2014). Consistent with *Sepulvado*, plaintiffs can carry that burden by showing that a credit report contains patently inaccurate information or sufficiently misleading information that constitutes inaccurate information. Of course, at this stage of the litigation, the focus is on the plaintiff's allegations, not an actual evidentiary showing.

As the parties note, the Fifth Circuit has neither recognized nor addressed the collateral-attack doctrine relied upon by the CRA Defendants. The Court has reviewed substantial caselaw on the doctrine, including cases not cited by either side. As one of the earlier circuit opinions to address the doctrine, the Court finds *Cahlin* particularly relevant. The case begins its analysis with:

> Although courts have assumed that the so-called "accuracy defense" is a question fit for disposition on motion for summary judgment, they have widely diverged in their interpretations of what constitutes an "accurate" credit report. Accuracy is quite clearly not a self-defining concept, and FCRA's fragmentary legislative history provides little, if any, guidance as to how Congress intended this standard to be applied.

936 F.2d at 1156-57 (footnotes omitted).

In footnote 9, the Eleventh Circuit notes that the term of art, "accuracy defense," "is actually a misnomer because the burden of proving that a particular report is inaccurate is part of the plaintiff's case and not an affirmative defense for a defendant credit reporting agency." *See id*. at 1157 & n.9. That notation, however, does not necessarily resolve the question as to whether the collateral attack doctrine is a defense. This is so because accuracy as an element of an FCRA claim does not of itself preclude a defendant from asserting a defense that, while a particular entry may contain an inaccuracy under the prevailing law of a specific jurisdiction, such inaccuracy is not

9

sufficient to impose liability on a credit reporting agency. The following paragraphs provide an appropriate overview.

Once the plaintiff satisfies the initial burden to allege/show that a credit report contains inaccurate information, the agency may still ultimately "escape liability" under § 1681e(b) "if it establishes that an inaccurate report was generated by following reasonable procedures, which will be a jury question in the overwhelming majority of cases." *Id.* at 1156 (requiring a showing in context of summary judgment) (omitting footnote citation). Thus, absent a jury verdict, "a credit reporting agency can usually prevail only if a court finds, as a matter of law, that a credit report was 'accurate.'" *Id*. Furthermore, in jurisdictions defining inaccurate information as including "factually correct information that could also be interpreted as being misleading or incomplete," a credit reporting agency may prevail on summary judgment if it "can show that it has generated a credit report containing information of 'maximum possible accuracy.'" *Id*. at 1157. Given goals of the FCRA, "the standard of accuracy embodied in [§ 1681e(b)] is an objective measure that should be interpreted in an evenhanded manner toward the interests of both consumers and potential creditors in fair and accurate credit reporting." *Id*. at 1158.

"After a credit report has been prepared on a consumer, a credit reporting agency retains a duty under [§ 1681i(a)] of FCRA to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Id*. at 1160. In resolving a claim under this reinvestigation provision, "a court is generally called upon to determine whether the credit reporting agency could have discovered an error in a particular report through a reasonable investigation." *Id*. A plaintiff properly raises a reinvestigation claim "when a particular credit report contains a factual deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry." *Id*. Nevertheless, a consumer cannot succeed on a reinvestigation "claim against a credit reporting agency when it

10

exercises its independent professional judgment, based on full information, as to how a particular account should be reported on a credit report." *Id*.

This maximum-possible-accuracy defense could be where the CRA Defendants' collateral-attack doctrine might arise if it is a defense. However, given its approach in this case, the Court has no reason to decide whether the doctrine is a defense.

Transitioning to other matters. The Court notes that no one disputes whether Plaintiff is a consumer or whether the remaining defendants are consumer reporting agencies and persons subject generally to liability under the FCRA. The parties disagree as to whether Plaintiff has stated enough factual allegations to state a claim upon which relief can be granted under § 1681e and § 1681i(a)(1)(A). More particularly, whether she has pled enough facts to state a plausible claim that her credit reports contain inaccurate information.

The CRA Defendants ask the Court to find that Plaintiff has pled a legal issue rather than a factual inaccuracy. But the request ignores Plaintiff's factual allegations. Regardless of whether the military clause in the lease agreement permitted Plaintiff to terminate the lease agreement or whether Plaintiff invoked that clause, she has stated a plausible inaccuracy in any credit report which states that she owes or is responsible for any debt on the lease terminated by the Landlord prior to commencement of the lease. Whether Plaintiff is responsible for the alleged debt is plausibly determined by an investigation asking the Landlord whether it had terminated the lease. If the Landlord simply answers yes to that factual inquiry, then the credit reporting agency has no need to delve into any legal ramifications of the terminated lease. An unequivocal affirmation by the Landlord would show that the credit report is inaccurate in stating that Plaintiff is responsible for the debt.

To be sure, the allegation that the Landlord hired a collection agency to collect the alleged debt does cut against the likelihood that the Landlord fully terminated the lease. But, as the

Supreme Court has recognized, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (citation omitted). Even with those additional factual allegations, the Court finds that Plaintiff has alleged facts that "raise a right to relief above the speculative level." *Id*. 555.

Under the favorable review accorded to Plaintiff's allegations at this point in the litigation, the Landlord terminated the lease before it began, thus making her not responsible for the lease balance. From those facts, neither the credit reporting agencies nor the Court has need to engage in any determination as to whether Plaintiff is legally responsible for the debt. Plaintiff never incurred the debt. This is not a case where the validity of the debt turns only on a legal issue to be resolved by a court of law. Thus, the Court has no occasion to specifically endorse or reject the caselaw relied upon by the CRA Defendants. However, it does note that the CRA Defendants primarily rely on circuit opinions that addressed issues in a different procedural context. *See Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1238-39 (10th Cir. 2015) (summary judgment); *Johnson v. Trans Union, LLC*, 524 F. App'x 268, 270 (7th Cir. 2013) (same); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 884 (9th Cir. 2010) (class certification); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 63 (1st Cir. 2008) (summary judgment); *Cahlin*, 936 F.2d at 1154 (same). The procedural context can make a significant difference in the outcome of a dispositive motion.

Furthermore, although some courts have accepted the position of the CRA Defendants in the context of a motion to dismiss or for judgment on the pleadings, *see*, *e.g.*, *Denan v. Trans Union LLC*, 959 F.3d 290, 293 (7th Cir. 2020) (addressing appeal of Rule 12(c) dismissal); *Batterman v. BR Carroll Glenridge, LLC*, No. 1:19-CV-1598-CC-RDC, 2020 WL 1821322, at *6 (N.D. Ga. Apr. 10, 2020) (addressing motion for judgment on the pleadings and listing cases), *aff'd*, 829 F. App'x 478 (11th Cir. 2020), these types of cases are driven by the alleged facts. For

instance, even though the Seventh Circuit affirmed a dismissal under Rule 12(c) in a thorough, well-reasoned, and largely persuasive opinion, *see Denan*, 959 F.3d at 293-98, it later distinguished that case in a second persuasive opinion, *see Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 568 (7th Cir. 2021).

The latter opinion provides ample reasoning for not overlooking factual allegations of a particular case even when a circuit has "recognized a dichotomy between factual inaccuracies that consumer reporting agencies are statutorily obligated to reinvestigate, and 'legal inaccuracies' which are outside the competency of the consumer reporting agencies." *See id*. at 567-68 (quoting *Denan*, 959 F.3d at 296). *Chuluunbat* makes several critical distinctions and observations:

> A clear line has not been drawn between legal and factual inaccuracies in the FCRA context. Decisions of this court and other circuits do provide helpful guideposts. The paradigmatic example of a legal dispute is when a consumer argues that although his debt exists and is reported in the right amount, it is invalid due to a violation of law. In *Denan*, for example, the plaintiff did not dispute whether a debt existed or its amount, but instead contended he was not required to pay the debt because it was "legally invalid." We concluded that the consumer reporting agencies were not required to determine that the debt was invalid as a matter of law because "[o]nly a court can fully and finally resolve the legal question of a loan's validity," and therefore, "no reinvestigation by [the credit reporting agency] could have uncovered an inaccuracy in [the plaintiff's] credit report." . . .
>
> In contrast, examples of factual inaccuracies include the amount a consumer owes, and what day a consumer opened an account or incurred a payment. These questions do not require the consumer reporting agencies to make any legal determinations about the facts or legal judgments. A legal question may also be resolved as a matter of fact if a tribunal—such as a court or arbitrator—has adjudicated the matter. Taking notice of a previously resolved legal dispute involves some knowledge of the legal impact of court decisions, but it does not require the consumer reporting agency to make any legal determinations about the underlying claim.
>
> These examples show that the central question is whether the alleged inaccuracy turns on *applying* law to facts or simply examining the facts alone. Consumer reporting agencies are competent to make factual determinations, but they do not reach legal conclusions like courts and other tribunals do. . . .

*Id*. (citations omitted).

Under the persuasive reasoning of *Denan* and *Chuluunbat* in addition to the facts of this case, it makes no difference whether this Court accepts the caselaw primarily relied upon by the CRA Defendants. Plaintiff specifically disputes the factual accuracy of her credit reports. As she alleges, there is no debt owed because the lease was terminated as a factual matter before it commenced. To construe her claims as premised upon a breach of contract ignores her factual allegations. From her allegations, there was no breach, because there was no contract after the Landlord terminated the lease. The mere fact that her dispute involves a contract in some respect does not make all disputes legal in nature as argued by the CRA Defendants. While not a precise parallel, the facts here are more akin to a legal question that was resolved in favor of the plaintiff than a purely legal question at issue in *Denan* and other cases. However, the resolution came not from a tribunal or arbitrator but from the Landlord itself when it terminated the lease. Viewing the facts alleged in the light most favorable to the Plaintiff, her claimed inaccuracy is not proper for resolution at this stage of the litigation.

Although the *Batterman* case cited previously has some similarities with this case, material differences exist that result in a different outcome on the same type of motion. As discussed above, this Court finds that the factual allegations of this case are sufficient to survive the instant motion. Unlike *Batterman*, this is not a case where the pled facts "show that Plaintiff's FCRA claims are based on a legal, contractual dispute." *See* 2020 WL 1821322, at *7. *Batterman* involved a legal inaccuracy because the plaintiff disputed reported liquidated damages which had resulted from the plaintiff terminating the lease due to inhabitability even though the lease included a liquidated damages provision. *See id*. at *6. Importantly, the Plaintiff here alleges that the Landlord verbally terminated the lease after she notified it of the transfer orders and before the term of the lease commenced. Such termination by the Landlord would plausibly end any responsibility of Plaintiff

on the lease and would not invoke any contractual provision for liquidated damages.[2] Furthermore, as recognized by the magistrate judge who recommended denying the motion in *Batterman*, *see* 2020 WL 1821322, at *6, there should be some hesitancy in over-applying the dichotomy between legal and factual inaccuracies in the context of a motion for judgment on the pleadings.

Not only has Plaintiff alleged a factual inaccuracy as to the Landlord's termination of the lease, the Court can reasonably infer from her complaint that her credit reports were also allegedly inaccurate because the CRA Defendants failed to note that she disputes the entries. The CRA Defendants contend that such alleged inaccuracy is limited to a furnisher's failure under § 1681s-2(b). *See* Reply at 7. They are correct that § 1681s-2(b) applies only to furnishers of information, not credit reporting agencies. But they misconstrue Plaintiff's reliance on the alleged omission from her credit reports. She does not seek to hold the CRA Defendants liable under that provision. She instead relies on caselaw interpreting that provision to support finding that the alleged omission satisfies the materially misleading standard of inaccuracy set out in *Sepulvado*.

Even in the § 1681s-2(b) context, the Fifth Circuit has not addressed whether a "failure to flag an account as disputed" may make a credit entry sufficiently misleading to be considered as inaccurate within the meaning of the FCRA. *See Reeves v. Nelnet Loan Servs.*, No. 4:17-CV-3726, 2018 WL 2200112, at *6 (S.D. Tex. May 14, 2018). Other courts have found such an omission to be sufficiently misleading in that context. *See id.* (citing cases). For this particular point, the Court finds the differing context immaterial. Under the alleged facts here, if such an omission is sufficiently misleading for a furnisher of information under § 1681s-2(b), it is sufficiently misleading for credit reporting agencies under § 1681i or § 1681e(b).

---

[2] Notably, the *Batterman* court had a copy of the lease. *See* 2020 WL 1821322, at *1 (quoting part of the lease agreement and citing to an exhibit attached to the complaint), *6 (noting a legal issue of "whether the liquidated damages provision is enforceable against Plaintiff"). Consequently, there was no doubt regarding the existence of a liquidated damages provision. Nevertheless, the Court accords no distinguishing weight to the absence of the relevant lease in this case. It recognizes that such provisions are standard in leases.

Accordingly, the Court proceeds as though the Fifth Circuit would agree that a failure to note or flag an account as disputed may make a credit entry sufficiently misleading to be inaccurate for purposes of claims asserted against credit reporting agencies. Further, it agrees that "[o]nly 'bona fide' disputes or disputes with an indici[um] of merit obligate furnishers [and credit reporting agencies] to disclose that a consumer's account is subject to dispute." *See Reeves*, 2018 WL 2200112, at *6 (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009)). Based on Plaintiff's allegations, the Court finds she has alleged sufficient facts to state a plausible bona fide dispute with an indicium of merit to obligate the CRA Defendants to disclose her dispute on her credit reports.

On the allegations of this case, Plaintiff has stated claims under the FCRA upon which relief can be granted because the relevant credit reports include either factually inaccurate information or sufficiently misleading information that qualifies as inaccurate. She has carried her pleading burden on her claims against the CRA Defendants. If Plaintiff does not owe the debt factually, for instance, because the Landlord terminated the lease before it commenced, then it is plausible that a credit report showing the debt owed is patently incorrect. Similarly, if a credit report allegedly lacks a notation that the debt is subject of a bona fide dispute, such allegations would suffice to allege that the report was inaccurate by being misleading.

Because the CRA Defendants only challenge the accuracy element of Plaintiff's claims, the Court has no need to examine any other element. It, nevertheless, notes that once Plaintiff carries her initial burden, the CRA Defendants might rely on various defenses to defeat her claims. The Court, however, finds no defense that is conclusively established from the face of the complaint given the factual inaccuracies alleged by Plaintiff.

## III. CONCLUSION

For the foregoing reasons, the Court **DENIES** the *Joint Motion for Judgment on the Pleadings* (ECF No. 34) filed by the credit reporting agencies sued in this case.

**IT is so ORDERED.**

**SIGNED this 15th day of December 2021.**

*Jason Pulliam*
_____
**JASON PULLIAM
UNITED STATES DISTRICT JUDGE**